**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

PAUL DAVID DANIELS,

     *Plaintiff,*

v.                                                    CASE NO.  _____

MANATEE COUNTY, a political
subdivision of the State of Florida;
CHERI CORYEA, individually; JACOB
SAUR, individually; and SARAH
BROWN RICHMOND, individually,

     *Defendants.*

_____/

## **COMPLAINT**

     Plaintiff, Paul David Daniels ("Daniels"), sues Defendants, Manatee County; Manatee County Administrator Cheri Coryea ("Administrator Coryea"), in her individual capacity; Manatee County Director of Public Safety Jacob Saur, in his individual capacity ("Director Saur"); and Chief of Manatee County Animal Services Division Sarah Brown Richmond, in her individual capacity ("Chief Brown"), (collectively, "Defendants" or the "County") and states:

## **PRELIMINARY STATEMENT**

     1.    This is an action against the County and high ranking officials to redress the deprivation – under color of law, statute, custom or usage – of rights, privileges and immunities secured to Paul David Daniels by the First and Fourteenth Amendments to the United States Constitution and the Reconstruction Era Civil Rights Acts, codified at 42 U.S.C. §1983. In particular, this action challenges the County's deprivation of Daniels' First Amendment right to free speech on matters of public concern.

2.      This action seeks declaratory, injunctive and equitable relief, damages, and costs and attorneys' fees against all Defendants.

3.      This action seeks punitive damages against Administrator Coryea, Director Saur, and Chief Brown.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1343(a)(3) and 42 U.S.C. §§1983 & 1988.

5.      Compensatory, declaratory, injunctive, equitable, and punitive relief are sought pursuant to, *inter alia*, 28 U.S.C.§§ 2201 & 2202 and 42 U.S.C. § 1983.

6.      Costs and attorneys' fees may be awarded pursuant to, *inter alia*, 42 U.S.C. § 1988.

7.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because all of the actions upon which this case is based were committed and/or occurred in the Middle District of Florida.

## THE PARTIES

8.      Plaintiff Paul David Daniels, at all times material, was and is a United States citizen and lawful resident of Manatee County and over the age of 18. He was a volunteer employee of Manatee County Animal Services ("MCAS"), a division of Manatee County.

9.      Defendant Manatee County is a county and political subdivision of the state of Florida and is made up of fourteen departments, including its Public Safety Department. MCAS is a division of the Public Safety Department.

10.      Defendant Cheri Coryea, at all material times, was the Manatee County Administrator. Administrator Coryea was appointed by the Board of Manatee County

Commissioners and was responsible for carrying out the policies and directives of the Commission and for the supervision and management of all Manatee County department directors and division chiefs.

11.     Defendant Jacob Saur, at all material times, was the Director of the Manatee County Public Safety Department. Director Saur was responsible for the operation of all divisions of the Public Safety Department, including MCAS.

12.     Defendant Sarah Brown Richmond, at all material times, was the Chief of MCAS. Chief Brown was responsible for the operation of MCAS, for establishing and/or enforcing MCAS employee policies, and for hiring, training, and disciplining employees within MCAS. Chief Brown was the direct supervisor to MCAS Volunteer Coordinator Janine Davis.

13.     Administrator Coryea and/or Director Saur and/or Chief Brown, at all material times, were acting within the course and scope of their employment and had authority and exercised final decision making authority to terminate and/or adversely affect Daniels' volunteer employment.

## GENERAL ALLEGATIONS

14.     Daniels was a volunteer employee at the MCAS dog shelter for almost two years, starting on or about June 30, 2018.

15.     Daniels dedicated much of his free time to his volunteer work at MCAS, working at MCAS almost on a daily basis.

16.     Daniels' official job duties were limited to walking and cleaning up after the shelter dogs. He did not have any other official duties, including any related to shelter management, living conditions of the animals, medical care of the shelter animals, or maintenance of the shelter premises.

3

A. Daniels was a citizen concerned about a matter of great public importance, namely, the health and well-being of dogs living in MCAS's animal shelter.

17.     During Daniels' employment at MCAS, Daniels became increasingly concerned over MCAS's practice of housing dogs outdoors with little to no air ventilation or circulation, particularly during the extreme heat of Florida summer.

18.     On or about September 8, 2019, a dog that was kept outdoors all summer and was known to be ill was found dead in her outdoor cage. This escalated Daniels' concerns for the remaining dogs housed outdoors.

19.     As a concerned citizen, Daniels wrote emails from his private email account to Manatee County commissioners and/or administrators on multiple occasions in an attempt to bring attention to the outdoor animals' uninhabitable living conditions.

20.     Several of Daniels' communications to Manatee County authorities went unanswered, but some were answered with reassurances to Daniels that plans for relief and positive changes to the animals' living conditions were underway.

21.     However, dogs at MCAS continued to be housed outdoors at uninhabitable temperatures with little to no air ventilation or circulation up to and including the date of Daniels' termination.

B. The County retaliated against Daniels.

22.     On or about June 9, 2020, Daniels publicly commented on several matters of public concern regarding Manatee County's commissioners' and/or Administrator Coryea's disregard for the outdoor dogs at MCAS's animal shelter, specifically posting on a Facebook page called "Support No Kill Manatee County" the following messages:

    a. A valid subject to focus on is the continued housing of dogs outdoors, under
       metal roofs, surrounded by concrete block walls during the extreme heat and
       humidity. Dogs are suffering in these outdoor cages. Manatee County has

been promising relief for at least 3 years – yet we are now into the heat of June and dogs are tonight left outdoors with little air circulation. Last September, in order to deflect heat over the death of a dog, Administrator Coryea promised relief. 9 months later the dogs are still housed and suffering outside. This is a County issue. A property management issue. Manatee County can do better.

b. I have written multiple letters to Commissioners and County Admin Coyrea. They don't even respond. Used to be that anytime a taxpayer wrote an elected official, a response would be received – even if it was just polite nonsense. On Sept 18, 2019 Admin Coryea wrote me an email in response to the death of several dogs at the shelter that the air circulation would be improved soon. And that she would keep me updated. She has done neither – even after I wrote her asking for updates twice in the last few months. I have encouraged other volunteer (*sic*) to write the commission and tonight sent a letter to the editor of both local papers. It bothers me to no end, with all the wealth and animal loving citizens in our county, to think that we are allowing dogs to live outdoors. It is not the shelter's fault. The property is under control of the Property Mgmt and the Administration.

23.     Daniels' statements in the public interest, however, did not result in correction by the County. Rather, they fueled a retaliatory desire to silence Daniels in order to protect the County from scrutiny.

24.     On or about June 11, 2020, Daniels received a warning letter from MCAS Volunteer Coordinator Janine Davis ("Davis"), citing Daniels' online statements quoted in Paragraph 22 (a) and (b) as being "inconsistent with the best interest of" MCAS. A true and correct copy of the warning letter is attached hereto as **Exhibit A** [hereinafter "Warning Letter"].

25.     On or about June 12, 2020, Daniels posted on his own personal Facebook page the following:

a. I volunteer at Manatee County Animal Shelter. I love being there. I support with all my heart the role the shelter plays in being a home for the neglected, abandoned, mistreated and unwanted animals in our community. The shelter is a public facility. It's budget and funding come from Manatee County taxpayers. Today, the shelter I am so dedicated to threatened to terminate my volunteering because I dared to criticize the County for housing dogs in their care outdoors, in the heat

of Florida summer. This is the 3rd summer that the County has promised, and not delivered, relief for these animals that are kept under a metal roof and surrounded by concrete block walls with little air circulation. It is inhumane. I will continue sharing everywhere I can the fact that our County Commissioners, with their $1.5 billion annual budget, are OK with dogs suffering in the Florida heat and humidity. We are a better community than that. And shame on them for threatening those that speak out with terminating their much needed service in support of these same dogs.

26.     Despite his disappointment at being threatened with termination, Daniels continued to support MCAS and to advocate for its employees. For instance, on or about June 14, 2020, Daniels rose to MCAS's defense and responded to negative allegations against MCAS, which had been posted by the "Support No Kill Manatee County" Facebook page, claiming MCAS "staff is sneaky & tries to find ways to kill in secret." In MCAS's defense, Daniels commented:

    a.   ALL – EVERY SINGLE ONE of the employees at MCAS love animals. To say they are sneaky and looking to kill an animal is complete BS. The shelter deserves, and needs the public's support. Channel your passion to your County Commissioner – ask them to provide the funding required to improve our shelter. Start with demanding relief for the dogs that are housed outdoors in the summer heat.

27.     In every single Facebook post Daniels wrote related to MCAS, his message remained consistent: MCAS and shelter management were not to blame for the disregard to the outdoor shelter dogs' substandard living conditions; rather, it was the duty of the County commissioners and administrator to make the necessary improvements to the shelter. Daniels' plea to his Facebook followers was for them to put political pressure on the County commissioners and/or administrator to put appropriate remedial measures in action.

28.     Despite Daniels' continued advocacy on behalf of MCAS and its animals, on or about June 16, 2020, Daniels was terminated by letter, signed by Davis. The letter stated:

>You have continued to make malicious statements about Manatee County Animal
>Services ("MCAS") and this has affected your relationship with the shelter as well
>as our reputation in the community. Your actions have led to MCAS employees
>receiving threats of harm, including death, and we can no longer have you
>participate in our Volunteer Program.

A true and correct copy of the termination letter is attached hereto as **Exhibit B** [hereinafter

"Termination Letter"].

    C.   The Termination Letter makes false claims about Daniels.

    29.    The assertion in the Termination Letter that Daniels' statements had affected his

relationship with the shelter was false. Daniels' relationship with his co-workers and co-

volunteers remained positive.

    30.    The assertion in the Termination Letter that Daniels' statement affected MCAS's

reputation in the community is also false. Daniels did not make any statement that could damage

MCAS's reputation.

    31.    MCAS shelter operations have continued as efficiently as they did prior to

Daniels' statements.

    32.    The assertion in the Termination Letter that Daniels' statements led to MCAS

employees receiving threats was false.

    33.    Undersigned counsel, on behalf of Daniels, submitted a public records request to

Manatee County, pursuant to Chapter 119 of the Florida Statutes, for the following records:

>All records that communicate any physical or death threat to Manatee
>County Animal Services, the animal shelter, or any employee or
>volunteer therein, from 2018 to present.

    34.    In response, the Manatee County public records custodian confirmed "[t]here

have been no death threats or threats of physical harm made directly to staff at Animal Services"

from 2018 to present.[1] A true and correct copy of the records custodian's response is attached hereto as **Exhibit C**.

D. The County invented pretextual reasons for terminating Daniels.

35.    On or about July 6, 2020, undersigned counsel sent a letter to Davis on Daniels' behalf, explaining that Daniels' termination was unlawful and unconstitutional and demanding that Daniels be reinstated to his volunteer position (the "Demand Letter").

36.    Assistant Manatee County Attorney Douglas E. Polk responded to the Demand Letter by letter dated July 17, 2020 (the "Response Letter"). The Response Letter confirmed MCAS's decision to terminate Daniels for his Facebook posts and declined Daniels' demand for reinstatement to his former position. Contrary to the Termination Letter, it now raised new and pretextual reasons for Daniels' termination. Specifically, the Response Letter alleged that Daniels' social media posts were "the final issue," and that Daniels had been the subject of complaints related to his interactions with the animals and physical intimidation against female staff on site.

37.    Surprised by these allegations, which were not cited in either the Warning or Termination Letters as reasons for Daniels' termination, Daniels, through undersigned counsel, submitted a public records request to Manatee County, pursuant to Chapter 119 of the Florida Statutes, for Daniels' complete personnel file.

38.    Daniels' personnel file – consisting mostly of PDF copies of old emails to or from Daniels and emails between or among other County officials discussing Daniels – show no

---

[1] Undersigned counsel also submitted an identical public records request to the Manatee County Sheriff's Office, but the Sheriff's Office indicated no responsive records exist.

instances of official complaints against, or warnings to, Daniels other than those related to the Facebook posts at issue.

39.     Even though the emails contained in the Daniels' personnel file span as far back as June 2019, the metadata associated with the PDF copies of those emails that make up Daniels' personnel file show that the majority of those records were created by MCAS employees on July 8, 2020 – two days underlining after receiving Daniels' Demand Letter. The remaining personnel records were created on July 28, 2020 – the date that the County records custodian responded to undersigned counsel's public records request for Daniels' personnel records. This indicates that MCAS had no existing personnel file for Daniels prior to July 8, 2020.

40.     Daniels' personnel file does not contain any information showing that MCAS ever disciplined, suspended, or threatened Daniels with termination prior to issuing the Warning Letter.

41.     Daniels, through undersigned counsel, also submitted a public records request to Manatee County, pursuant to Chapter 119 of the Florida Statutes, for all text messages and emails between or among Chief Brown, Davis, Christine Vergallito (MCAS Shelter Manager), and/or Kim Bastien (MCAS Assistant Shelter Manger), which mentioned Daniels from June 1, 2019 to October 7, 2020. The responsive records to this request do not contain any information showing that MCAS ever disciplined, suspended, or threatened Daniels with termination prior to issuing the Warning Letter.

42.     Based on the timing of the Demand Letter on July 6, 2020, the creation of all the personnel file documents on or after July 8, 2020, and the Response Letter on July 17, 2020, it is clear that all rationales offered in the Response Letter to justify Daniels' termination (other than Daniels' Facebook posts) were pretextual and created after-the-fact in an effort to overcome the

Demand Letter's correct conclusion that Daniels' termination was premised solely on his protected speech.

E.  Daniels is not barred from bringing this suit.

43.   The Response Letter further alleged that Daniels, through the Manatee County Government Service Agreement (the "Alleged Service Agreement"), "waived any and all rights to bring any legal action and covenanted not to sue Manatee County, its Commissioners or employees, and acknowledged that the waiver would act as a complete bar to any action he may attempt to bring." Contrary to this assertion, Daniels' personnel file contains no such acknowledgement or assent by Daniels to any such Alleged Service Agreement.

44.   Any agreement containing such a waiver, if it existed, would be unenforceable in this instance because the interest in its enforcement is outweighed in these circumstances by the public policy harmed by its enforcement – namely, a citizen's right to exercise his First Amendment rights to engage in speech on matters of public concern without the fear of retaliation by an employer.

F.  Daniels was terminated pursuant to County policy, practice, or custom.

45.   County Administrator Coryea and/or County officials, whom have been delegated final policymaking authority over the hiring, training, and disciplining of MCAS volunteer employees – including Director Saur and/or Chief Brown – approved the decision to terminate Daniels based on his constitutionally protected speech.

46.   Administrator Coryea and/or Director Saur and/or Chief Brown misused the power of their office and acted in concert with others to gain the greatest leverage and superior position in carrying out their retaliatory employment decisions with regard to Daniels.

47.     The attack on Daniels was driven by retaliation for Daniels' protected activity in speaking on issues of public concern and was motivated by the illegitimate goal of protecting the County from scrutiny.

48.     The Response Letter, authored by the Office of the Manatee County Attorney, is evidence that Administrator Coryea and/or County officials, whom have been delegated final policymaking authority over the hiring, training, and disciplining of MCAS volunteer employees, expressly approved the termination of Daniels for exercising his First Amendment rights.

49.     Administrator Coryea and/or County officials, whom have been delegated final policymaking authority over the hiring, training, and disciplining of MCAS volunteer employees – including Director Saur and/or Chief Brown – knew or should have known there was danger that a subordinate would engage in unconstitutional conduct by terminating Daniels for his constitutionally protected speech, and had the authority to take steps to prevent the conduct, yet failed to act.

50.     Administrator Coryea's, Director Saur's, and/or Chief Brown's acquiescence and/or deliberate indifference to the unconstitutional conduct of terminating Daniels for his constitutionally protected speech is affirmatively linked to the deprivation of Daniels' First and Fourteenth Amendment rights.

51.     By the County's decision to terminate Daniels in retaliation for his speech on matters of broad social and political concern, and the County's subsequent Response Letter from the County attorney that expressly approves the decision by the County's final policymaking authority on those grounds, the County implemented a policy, practice, or custom that constituted knowing, reckless, and/or deliberate or conscious indifference to Daniels' First and

Fourteenth Amendment rights. The County's enforcement of this policy, practice, or custom was affirmatively linked to the violation of Daniels' federally protected rights.

52.     Due to the Defendants' unconstitutional acts and/or omissions, Daniels has been irreparably harmed and has suffered damages. See Elrod v. Burns, 427 U.S. 347 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

53.     Despite this harm, Daniels continues to desire to work as a volunteer at MCAS in hopes to do what he can to improve the lives of homeless shelter dogs.

## COUNT I

## CLAIM FOR VIOLATION OF § 42 U.S.C. 1983 AGAINST MANATEE COUNTY

54.     Daniels adopts and realleges the allegations of paragraphs 1-53.

55.     During all times material, Manatee County acted under color and pretense of state law, under the color of statutes and customs of the State of Florida and the statues, ordinances and customs of the State of Florida.

56.     During all times material, Daniels was engaged in protected First Amendment activities and speech of public concern involving the health, safety, and well-being of dogs housed in the MCAS shelter.

57.     Daniels was entitled to protection for speaking on matters of public concern, and speaking as a citizen concerned for the health, safety, and well-being of dogs housed in the MCAS shelter.

58.     The interests of the public good, and Daniels' interest in speaking on matters of public concern, outweigh Manatee County's concern with regard for effective and efficient fulfillment of legitimate responsibilities to the public.

59.     Manatee County's adverse employment decisions and eventual termination of Daniels described herein would not have occurred but for Daniels' speaking out on matters of public concern.

60.     The protected activities and speech described herein were a substantial and/or motivating factor in Manatee County's adverse employment decisions and eventual termination of Daniels.

61.     In terminating Daniels for exercising his First Amendment rights, Manatee County engaged in illegal and unconstitutional conduct, caused injury to Daniels, and deprived him of the rights, privileges and immunities secured to him by the First and Fourteenth Amendments to the United States Constitution and the laws of the United States and the State of Florida.

62.     Manatee County's termination of Daniels violated, *inter alia*, Daniels' following rights secured by the United States Constitution:

   a.   the First Amendment right not to be discharged from public employment in retaliation for public speech on matters of public concern; and

   b.   the First Amendment right to freedom of speech on matters of public concern, to wit: Daniels' right to speak in a public forum regarding views on a matter fairly considered as relating to a matter of political, social or other concern to the community.

63.     Manatee County knew or should have known that its actions deprived Daniels of his constitutional rights as set forth above.

64.     Manatee County, in its decision to terminate Daniels, and by express approval of the highest ranking available supervisory personnel – namely, Administrator Coryea, Director Saur, and/or Chief Brown – as evident by the Office of the County Attorney's express approval of and acquiesce to the termination decision in its Response Letter, is liable pursuant to an

established policy, custom or usage for approving of, acquiescing to and/or condoning the First Amendment violations in general, thereby ratifying and approving the wrongful acts of its officials and staff.

65.     Manatee County had the power to prevent or aid in preventing the commission of the aforementioned constitutional violations and could have done so by reasonable diligence. Instead, Manatee County knowingly, recklessly and with deliberate and/or conscious indifference failed or refused to correct the violations of Daniels' clearly established and well-settled constitutional rights and/or tacitly approved such wrongs.

66.     As a direct and proximate result of the actions or omissions of Manatee County, Daniels suffered damages.

WHEREFORE, Plaintiff Paul David Daniels demands judgment against Defendant Manatee County for damages, injunctive relief to prevent further violations of the law, reinstatement, costs, attorneys' fees, and such further relief this Court deems just and equitable.

## COUNT II

### CLAIM FOR VIOLATION OF § 42 U.S.C. 1983
### AGAINST CHERI CORYEA, IN HER INDIVIDUAL CAPACITY

67.     Daniels adopts and realleges the allegations of paragraphs 1-53.

68.     During all times material, Administrator Coryea acted under color and pretense of state law, under the color of statutes and customs of the State of Florida and the statues, ordinances and customs of the State of Florida.

69.     During all times material, Daniels was engaged in protected First Amendment activities and speech of public concern involving the health, safety, and well-being of dogs housed in the MCAS shelter.

70.     Daniels was entitled to protection for speaking on matters of public concern, and speaking as a citizen concerned for the health, safety, and well-being of dogs housed in the MCAS shelter.

71.     Administrator Coryea is responsible for the supervision and management of all Manatee County department directors and division chiefs. Accordingly, Administrator Coryea has the power to review the exercise of Defendants Director Saur's and Chief Brown's discretion to terminate Daniels' volunteer employment.

72.     Administrator Coryea approved, acquiesced, and/or was deliberately indifferent to the exercise of Defendants Director Saur's and/or Chief Brown's discretion in terminating Daniels for exercising his First Amendment rights. In doing so, Administrator Coryea engaged in illegal and unconstitutional conduct, caused injury to Daniels, and deprived him of the rights, privileges and immunities secured to him by the First and Fourteenth Amendments to the United States Constitution and the laws of the United States and the State of Florida.

73.     Administrator Coryea's adverse employment decisions and eventual termination of Daniels described herein would not have occurred but for Daniels' speaking out on matters of public concern.

74.     The protected activities and speech described herein were a substantial and/or motivating factor in Administrator Coryea's adverse employment decisions and eventual termination of Daniels.

75.     Administrator Coryea's approval of the termination of Daniels directly violated, *inter alia*, Daniels' following rights secured by the United States Constitution:

> a.   the First Amendment right not to be discharged from public employment in retaliation for public speech on matters of public concern; and

    b. the First Amendment right to freedom of speech on matters of public concern, to wit: Daniels' right to speak in a public forum regarding views on a matter fairly considered as relating to a matter of political, social or other concern to the community.

76.     Administrator Coryea knew or should have known that her actions and/or omissions deprived Daniels of his constitutional rights as set forth above.

77.     By her approval of the decision to terminate Daniels, Administrator Coryea is liable pursuant to an established policy, custom or usage for approving of, acquiescing to and/or condoning the First Amendment violations in general, thereby ratifying and approving the wrongful acts of her staff.

78.     Administrator Coryea had the power to prevent or aid in preventing the commission of the aforementioned constitutional violations and could have done so by reasonable diligence. Instead, Administrator Coryea knowingly, recklessly and with deliberate and/or conscious indifference failed or refused to correct the violations of Daniels' clearly established and well-settled constitutional rights and/or tacitly approved such wrongs.

79.     As a direct and proximate result of the actions or omissions of Administrator Coryea, Daniels suffered damages.

    WHEREFORE, Plaintiff Paul David Daniels demands judgment against Defendant Cheri Coryea for compensatory and punitive damages, injunctive relief to prevent further violations of the law, reinstatement, costs, attorneys' fees, and such further relief this Court deems just and equitable.

## COUNT III

### CLAIM FOR VIOLATION OF § 42 U.S.C. 1983 AGAINST JACOB SAUR, IN HIS INDIVIDUAL CAPACITY

80.     Daniels adopts and realleges the allegations of paragraphs 1-53.

81.     During all times material, Director Saur acted under color and pretense of state law, under the color of statutes and customs of the State of Florida and the statues, ordinances and customs of the State of Florida.

82.     During all times material, Daniels was engaged in protected First Amendment activities and speech of public concern involving the health, safety, and well-being of dogs housed in the MCAS shelter.

83.     Daniels was entitled to protection for speaking on matters of public concern, and speaking as a citizen concerned for the health, safety, and well-being of dogs housed in the MCAS shelter.

84.     Director Saur is responsible for the operation of all divisions of the Manatee County Public Safety Department, including MCAS. Accordingly, Director Saur has the power to review the exercise of Defendant Chief Brown's and/or Volunteer Coordinator Janine Davis' discretion to terminate Daniels' volunteer employment.

85.     Director Saur approved, acquiesced, and/or was deliberately indifferent to the exercise of Defendant Chief Brown's and/or Davis' discretion in terminating Daniels for exercising his First Amendment rights. In doing so, Director Saur engaged in illegal and unconstitutional conduct, caused injury to Daniels, and deprived him of the rights, privileges and immunities secured to him by the First and Fourteenth Amendments to the United States Constitution and the laws of the United States and the State of Florida.

86.     Director Saur's adverse employment decisions and eventual termination of Daniels described herein would not have occurred but for Daniels' speaking out on matters of public concern.

87.     The protected activities and speech described herein were a substantial and/or motivating factor in Director Saur's adverse employment decisions and eventual termination of Daniels.

88.     Director Saur's approval of the termination of Daniels directly violated, *inter alia*, Daniels' following rights secured by the United States Constitution:

    a.  the First Amendment right not to be discharged from public employment in retaliation for public speech on matters of public concern; and

    b.  the First Amendment right to freedom of speech on matters of public concern, to wit: Daniels' right to speak in a public forum regarding views on a matter fairly considered as relating to a matter of political, social or other concern to the community.

89.     Director Saur knew or should have known that his actions and/or omissions deprived Daniels of his constitutional rights as set forth above.

90.     By his approval of the decision to terminate Daniels, Director Saur is liable pursuant to an established policy, custom or usage for approving of, acquiescing to and/or condoning the First Amendment violations in general, thereby ratifying and approving the wrongful acts of his staff.

91.     Director Saur had the power to prevent or aid in preventing the commission of the aforementioned constitutional violations and could have done so by reasonable diligence. Instead, Director Saur knowingly, recklessly and with deliberate and/or conscious indifference failed or refused to correct the violations of Daniels' clearly established and well-settled constitutional rights and/or tacitly approved such wrongs.

92.     As a direct and proximate result of the actions or omissions of Director Saur, Daniels suffered damages.

WHEREFORE, Plaintiff Paul David Daniels demands judgment against Defendant Jacob Saur for compensatory and punitive damages, injunctive relief to prevent further violations of the law, reinstatement, costs, attorneys' fees, and such further relief this Court deems just and equitable.

## COUNT IV

### CLAIM FOR VIOLATION OF § 42 U.S.C. 1983
### AGAINST SARAH BROWN RICHMOND, IN HER INDIVIDUAL CAPACITY

93. Daniels adopts and realleges the allegations of paragraphs 1-53.

94. During all times material, Chief Brown acted under color and pretense of state law, under the color of statutes and customs of the State of Florida and the statues, ordinances and customs of the State of Florida.

95. During all times material, Daniels was engaged in protected First Amendment activities and speech of public concern involving the health, safety, and well-being of dogs housed in the MCAS shelter.

96. Daniels was entitled to protection for speaking on matters of public concern, and speaking as a citizen concerned for the health, safety, and well-being of dogs housed in the MCAS shelter.

97. Chief Brown is responsible for the operation of MCAS, for establishing and/or enforcing MCAS employee policies, for hiring, training, and disciplining employees within MCAS. Accordingly, Chief Brown has the power to review the exercise of Volunteer Coordinator Janine Davis' discretion.

98. Chief Brown terminated Daniels for exercising his First Amendment rights and/or approved, acquiesced, and/or was deliberately indifferent to the exercise of Davis' discretion in terminating Daniels for exercising his First Amendment rights. In doing so, Chief Brown

19

engaged in illegal and unconstitutional conduct, caused injury to Daniels, and deprived him of the rights, privileges and immunities secured to him by the First and Fourteenth Amendments to the United States Constitution and the laws of the United States and the State of Florida.

99.     Chief Brown's adverse employment decisions and eventual termination of Daniels described herein would not have occurred but for Daniels' speaking out on matters of public concern.

100.    The protected activities and speech described herein were a substantial and/or motivating factor in Chief Brown's adverse employment decisions and eventual termination of Daniels.

101.    Chief Brown's approval of the termination of Daniels directly violated, *inter alia*, Daniels' following rights secured by the United States Constitution:

    a.  the First Amendment right not to be discharged from public employment in retaliation for public speech on matters of public concern; and

    b.  the First Amendment right to freedom of speech on matters of public concern, to wit: Daniels' right to speak in a public forum regarding views on a matter fairly considered as relating to a matter of political, social or other concern to the community.

102.    Chief Brown knew or should have known that her actions and/or omissions deprived Daniels of his constitutional rights as set forth above.

103.    By her approval of the decision to terminate Daniels, Chief Brown is liable pursuant to an established policy, custom or usage for approving of, acquiescing to and/or condoning the First Amendment violations in general, thereby ratifying and approving the wrongful acts of her staff.

104.    Chief Brown had the power to prevent or aid in preventing the commission of the aforementioned constitutional violations and could have done so by reasonable diligence.

Instead, Chief Brown knowingly, recklessly and with deliberate and/or conscious indifference failed or refused to correct the violations of Daniels' clearly established and well-settled constitutional rights and/or tacitly approved such wrongs.

105.    As a direct and proximate result of the actions or omissions of Chief Brown, Daniels suffered damages.

WHEREFORE, Plaintiff Paul David Daniels demands judgment against Defendant Sarah Brown Richmond for compensatory and punitive damages, injunctive relief to prevent further violations of the law, reinstatement, costs, attorneys' fees, and such further relief this Court deems just and equitable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Paul David Daniels respectfully requests this Court to (1) declare that the acts and/or omissions of Manatee County, Cheri Coryea, acting in her individual capacity, Jacob Saur, acting in his individual capacity, and Sarah Brown Richmond, acting in her individual capacity, violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution; (2) enjoin Defendants from continuing to retaliate against Plaintiff for exercising his constitutional rights by withholding his volunteer employment; (3) order Defendants to reinstate Plaintiff to his former volunteer position; (4) award compensatory damages against all defendants; (5) award punitive damages against Administrator Coryea, Director Saur, and Chief Brown; (6) award costs and attorney's fees; and (7) grant any further relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff Paul David Daniels demands trial by jury on all issues so triable.


Dated: December 3, 2020.

Respectfully submitted:

THOMAS & LoCICERO PL

s/*James J. McGuire*
James J. McGuire
  Florida Bar No. 187798
  jmcguire@tlolawfirm.com
Linda R. Norbut
  Florida Bar No. 1011401
  lnorbut@tlolawfirm.com
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile:  (813) 984-3070


## CERTIFICATE OF SERVIFCE

I HEREBY CERTIFY that a true and correct copy of the foregoing will be served by electronic service through the Clerk of the Court's CM/ECF filing system.  I further certify that the foregoing document will be mailed by first class mail, postage prepaid, to any parties that do not participate in the CM/ECF filing system.

Dated: December 3, 2020.

s/ *James J. McGuire*
Attorney